**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF IOWA**
**WESTERN DIVISION**

| | |
|---|---|
| United Specialty Insurance Company, | Case No.: 17-cv-4045-LRR |
| Plaintiff, | |
| v. | **COMPLAINT FOR** **DECLARATORY JUDGMENT** |
| AMBE MA Iowa, Inc. d/b/a Corey Motel | **[JURY DEMAND REQUESTED]** |
| Defendant. | |

For its Complaint, Plaintiff United Specialty Insurance Company hereby brings this Complaint for Declaratory Judgment against AMBE MA Iowa, Inc. d/b/a Corey Motel.

## <u>INTRODUCTION</u>

1.     This declaratory judgment action is brought pursuant to 28 U.S.C. § 2201 and seeks a declaration regarding whether first-party property insurance coverage is available to AMBE MA Iowa, Inc. for (1) storm damage alleged to have occurred in August 2015, and (2) alleged damages arising out of a City of Sioux City, Iowa demolition order following discovery of numerous code violations on the property.

## <u>THE PARTIES</u>

2.     Plaintiff United Specialty Insurance Company ("United Specialty") is an insurance company organized under the laws of the State of Delaware with its principal place of business in Bedford, Texas.

3.     Defendant AMBE MA Iowa, Inc. ("AMBE MA") is a corporation organized under the laws of the State of Nebraska. Upon information and belief, AMBE MA's principal place of business is in Sioux City, Iowa.

4.     AMBE MA owned and operated the Corey Motel located at 1724 Rock Street, Sioux City, Iowa until the property was ordered demolished by the City of Sioux City, Iowa (the "City") because the structures on the property were declared by the City to be in a dangerous or dilapidated condition.

## JURISDICTION AND VENUE

5.     The amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

6.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a).

7.     This Court has personal jurisdiction over AMBE MA.

8.     Venue is proper in this District under 28 U.S.C. § 1391(b).

## JURY TRIAL

9.     Plaintiff United Specialty demands a trial by jury.

## GENERAL FACTUAL BACKGROUND

10.     The Corey Motel consists of one main building and thirteen standalone units for a total of fourteen buildings.

11.     AMBE MA purchased the Corey Motel in 2007 on a contract for deed.

12.     Prior to purchasing the property, the President of AMBE MA, Abhinandan Patel, only visited the property once for a brief period of time.

2

13.     After that, in the nine years that followed, Mr. Patel only visited the property two or three times.

14.     At all material times herein, the Corey Motel was minimally maintained and was in a general state of disrepair.

15.     This dilapidation and disrepair would ultimately cause the City to order the Corey Motel to be ordered to be demolished.

16.     AMBE MA has represented to United Specialty that it was receiving monthly business income from the Corey Motel.

## FACTUAL BACKGROUND OF THE STORM DAMAGE CLAIM

17.     Prior to AMBE MA's purchase of the United Specialty's insurance policy, on or about June 14, 2014, AMBE MA alleges that the Corey Motel sustained wind and/or hail damage, including roof damage.

18.     As a result of this alleged damage, AMBE MA submitted a claim for property damage to American Family Insurance, which insured the property on June 14, 2014.

19.     American Family paid AMBE MA $5,240 for damage to twelve of the fourteen buildings.

20.     Despite United Specialty's request for information as to whether the alleged June 14, 2014 roof damage was repaired, AMBE MA has not produced any documentation evidencing such repairs.

21.     In an examination under oath, Abhinandan Patel, the President of AMBE MA, testified that the last time the roofs were replaced was 2011 and that some roofs were updated in 2014 or 2015.

22.     Sometime in August 2016, during the United Specialty policy period, AMBE MA alleges that its property was damaged by two flash flood thunderstorms within a couple days of each other.

23.     AMBE MA alleges that with respect to one unit on the property, Unit 17, the storms allegedly caused a water leak into the unit.

24.     As a result of these alleged thunderstorms, AMBE MA submitted a claim estimate to repair the 14 roofs on the property that were allegedly damaged by wind and/or hail requiring $35,497.26 in repair costs.  This claim estimate is attached to this Complaint as Exhibit A.

25.     The repair estimate was dated November 8, 2014, prior to the United Specialty policy.

## FACTUAL BACKGROUND OF DEMOLITION CLAIM
## FOLLOWING A CARBON MONOXIDE EVENT

26.     On or about September 2, 2015, tenants from Unit 17 reported that water was leaking into unit 17.

27.     After this tenant report, Wade Peters, the property manager, covered the roof of Unit 17 with a blue tarp.

28.     Around 3:00 p.m. on September 2, 2015, Wade Peters entered Unit 17 to relight the pilot light to the water heater.

29.     At around 7:45 on September 2, 2015, the occupants of Unit 17 exhibited signs of carbon monoxide poisoning.

30.     Upon arrival, the Sioux City Fire Department took a carbon monoxide reading of Unit 17, measuring 270 parts per million.

31.     The Sioux City Fire Department observed that the tarp was covering the furnace and water heater vents.

32.     In Wade Peters's September 2, 2015 statement, he stated that he "was unaware that [he] did not have a big enough hole [in the tarp] to allow significant ventilation."

33.     As a result of the carbon monoxide level, Unit 17 was red-tagged by the Sioux City Fire Department.

34.     The red-tag event caused inspectors from the City to visit the property.

35.     Following further inspection of the property, AMBE MA was notified of numerous code violations.  Upon inspection, the City inspectors found numerous code violations in not just Unit 17, but every single one of the fourteen buildings.  The violations included, but were not limited to, missing window screens, improper wiring, mold, and, in some units, inhabitable conditions requiring total remodeling.  The list of violations set forth in the City's demolition order is set forth in Exhibit B.

36.     Further, on September 2, 2015, Sheila Ragar, a City inspector, issued a Notice to Abate Public Nuisance for 1724 Rock Street.

37.     The Notice to Abate Public Nuisance letter stated: "This property is not being maintained, there is an accumulation of household furniture and misc. rubbish and debris on the porches and/or yards of this property."

38.     A subsequent inspection by the City of Sioux City conducted on December 10, 2015 revealed ongoing violations, including code violations with the plumbing.

39.     On April 8, 2016, the City issued a Placard Hearing Notice because "[r]ecords currently on file in this office indicate that the property owner has either failed to commence and/or complete the required repairs, or complete demolition of the structure within the six (6) month time period, as required pursuant to Sioux City Municipal Code Section 20.06.030."

40.     The notice letter set a hearing for April 21, 2016.

41.     At the April 21, 2016 hearing, the City determined that the owner had failed to commence and/or complete the required repairs, or complete demolition of the structure within the six (6) month time period.

42.     As a result of AMBE MA's failure to bring the building into compliance with the code, on April 21, 2016, the City ordered the Corey Motel demolished.

43.     Following the demolition order, AMBE MA submitted a claim to United Specialty for coverage under the Building, Business Personal Property, Ordinance or Law, and Business Income / Extra Expenses Coverages.   "Proof of Loss" claim documents were submitted.

6

44.     As for each of these claim documents, AMBE MA stated that the "cause and origin or said loss are unknown and undetermined at this time.  Potential cause of the loss is either a gas line break or boiler equipment breakdown.  The origin of the loss is Unit 17, Bldg 3, City has required the insured to demolish the property per city code and ordinance, resulting in a total loss."

45.     The date of loss is listed as September 2, 2015, the date of the carbon monoxide event.

46.     Despite United Specialty's request to AMBE MA for evidence that there was a gas line break or boiler equipment breakdown, AMBE MA has not provided any evidence of a gas line break or boiler equipment breakdown.

47.     The Sioux City Fire Department records as to the events of September 2, 2015 do not mention a gas line break nor do they mention any alleged problem with the water heater in Unit 17.  The sole reference in the Fire Department records as to the cause of the carbon monoxide event is the tarp covering the roof.

48.     The City Inspectors did not find any physical damage to the gas lines and did not red-tag the property because of any alleged gas leak or water heater breakdown.

49.     In a November 16, 2015 letter written by Wade Peters, AMBE MA's property manager, to the City, Wade Peters did not indicate that AMBE MA had located and fixed a gas leak or had located and fixed any problem with the water heater in Unit 17.

7

## INSURANCE POLICY

50.     United Specialty issued Commercial Lines Policy, number USA 4083789, to AMBE MA, with a policy period of 3-30-2015 to 3-30-2016.

51.     The United Specialty policy consists of Commercial General Liability and Commercial Property coverage.

52.     The Commercial Property Coverage contains Building, Business Personal Property, Business Income / Extra Expenses, and Ordinance or Law coverages.  The limits for these coverages are found in the policy, which is attached to the Complaint at Exhibit C.

53.     In relevant part, the Building and Personal Property Coverage Forms reads:

### BUILDING AND PERSONAL PROPERTY COVERAGE FORM

* * *

**A.      Coverage**

We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

**1.      Covered Property**

Covered Property, as used in this Coverage Part, means the type of property described in this section, **A.1.,** and limited in **A.2.** Property Not Covered, if a Limit Of Insurance is shown in the Declarations for that type of property.

**a.      Building,** meaning the building or structure described in the Declarations, including:

* * *

8

**b.** **Your Business Personal Property** consists of the following property located in or on the building or structure described in the Declarations or in the open (or in a vehicle) within 100 feet of the building or structure or within 100 feet of the premises described in the Declarations, whichever distance is greater:

    **(1)** Furniture and fixtures;

    **(2)** Machinery and equipment;

    **(3)** "Stock";

    **(4)** All other personal property owned by you and used in your business;

    **(5)** Labor, materials or services furnished or arranged by you on personal property of others;

    **(6)** Your use interest as tenant in improvements and betterments. Improvements and betterments are fixtures, alterations, installations or additions:

        **(a)** Made a part of the building or structure you occupy but do not own; and

        **(b)** You acquired or made at your expense but cannot legally remove;

    **(7)** Leased personal property for which you have a contractual responsibility to insure, unless otherwise provided for under Personal Property Of Others.

* * *

**3.** **Covered Causes Of Loss**

See applicable Causes Of Loss form as shown in the Declarations.

**B.** **Exclusions And Limitations**

See applicable Causes Of Loss form as shown in the Declarations.

* * *

9

54. In relevant part, the Ordinance or Law Coverage provides:

**ORDINANCE OR LAW COVERAGE**

This endorsement modifies insurance provided under the following:

BUILDING AND PERSONAL PROPERTY COVERAGE FORM
CONDOMINIUM ASSOCIATION COVERAGE FORM
STANDARD PROPERTY POLICY

**A.** Each Coverage - Coverage **A,** Coverage **B** and Coverage **C** - is provided under this endorsement only if that Coverage(s) is chosen by entry in the above Schedule and then only with respect to the building identified for that Coverage(s) in the Schedule.

**B.** **Application Of Coverage(s)**

The Coverage(s) provided by this endorsement applies only if both **B.1.** and **B.2.** are satisfied and are then subject to the qualifications set forth in **B.3.**

    **1.** The ordinance or law:

        **a.** Regulates the demolition, construction or repair of buildings, or establishes zoning or land use requirements at the described premises; and

        **b.** Is in force at the time of loss.

    But coverage under this endorsement applies only in response to the minimum requirements of the ordinance or law. Losses and costs incurred in complying with recommended actions or standards that exceed actual requirements are not covered under this endorsement.

    **2.**   **a.** The building sustains direct physical damage that is covered under this policy and as a result of such damage, you are required to comply with the ordinance or law; or

        **b.** The building sustains both direct physical damage that is covered under this policy and direct physical damage that is not covered under this policy, and as a result of the building damage in its entirety, you are required to comply with the ordinance or law.

        **c.** But if the building sustains direct physical damage that is not covered under this policy, and such damage is the subject of the ordinance or law, then there is no coverage

under this endorsement even if the building has also sustained covered direct physical damage.

\* \* \*

**F.**     The terms of this endorsement apply separately to each building to which this endorsement applies.

55.     In relevant part, the Business Income and Extra Expense Coverage form reads:

### BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy, the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section F. Definitions.

**A.     Coverage**

**1.     Business Income**

\* \* \*

We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by direct physical loss of or damage to property at premises which are described in the Declarations and for which a Business Income Limit Of Insurance is shown in the Declarations. The loss or damage must be caused by or result from a Covered Cause of Loss. With respect to loss of or damage to personal property in the open or personal property in a vehicle, the described premises include the area within 100 feet of such premises.

\* \* \*

2. **Extra Expense**

    a. Extra Expense Coverage is provided at the premises described in the Declarations only if the Declarations show that Business Income Coverage applies at that premises.

    b. Extra Expense means necessary expenses you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or damage to property caused by or resulting from a Covered Cause of Loss.

\* \* \*

3. **Covered Causes Of Loss, Exclusions And Limitations**

    See applicable Causes Of Loss form as shown in the Declarations.

\* \* \*

56.    All of the coverages set forth above require the insured to show that their damage was caused by or result from a "Covered Cause of Loss."

57.    The Covered Causes of Loss are found in Form CP 10 30 10 12. In relevant part, that form provides:

## CAUSES OF LOSS - SPECIAL FORM

Words and phrases that appear in quotation marks have special meaning. Refer to Section G. Definitions.

**A.    Covered Causes Of Loss**

When Special is shown in the Declarations, Covered Causes of Loss means direct physical loss unless the loss is excluded or limited in this policy.

**B.    Exclusions**

    1. We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

12

a. **Ordinance Or Law**

The enforcement of or compliance with any ordinance or law:

**(1)** Regulating the construction, use or repair of any property; or

**(2)** Requiring the tearing down of any property, including the cost of removing its debris.

This exclusion, Ordinance Or Law, applies whether the loss results from:

**(a)** An ordinance or law that is enforced even if the property has not been damaged; or

**(b)** The increased costs incurred to comply with an ordinance or law in the course of construction, repair, renovation, remodeling or demolition of property, or removal of its debris, following a physical loss to that property.

\* \* \*

c. **Governmental Action**

Seizure or destruction of property by order of governmental authority.

But we will pay for loss or damage caused by or resulting from acts of destruction ordered by governmental authority and taken at the time of a fire to prevent its spread, if the fire would be covered under this Coverage Part.

\* \* \*

**2.** We will not pay for loss or damage caused by or resulting from any of the following:

\* \* \*

d. **(1)** Wear and tear:

**(2)** Rust or other corrosion, decay, deterioration, hidden or latent defect or any quality in

13

property that causes it to damage or destroy itself;

**(3)** Smog;

**(4)** Settling, cracking, shrinking or expansion

\* \* \*

But if an excluded cause of loss that is listed in **2.d.(1)** through **(7)** results in a "specified cause of loss" or building glass breakage, we will pay for the loss or damage caused by that "specified cause of loss" or building glass breakage.

\* \* \*

**3.** We will not pay for loss or damage caused by or resulting from any of the following, **3.a.** through **3.c.** But if an excluded cause of loss that is listed in **3.a.** through **3.c.** results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

\* \* \*

**c.** Faulty, inadequate or defective:

**(1)** Planning, zoning, development, surveying, siting;

**(2)** Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

**(3)** Materials used in repair, construction, renovation or remodeling; or

**(4)** Maintenance;

of part or all of any property on or off the described premises.

\* \* \*

**C.**    **Limitations**

The following limitations apply to all policy forms and endorsements, unless otherwise stated:

**1.**    We will not pay for loss of or damage to property, as described and limited in this section. In addition, we will not pay for any loss that is a consequence of loss or damage as described and limited in this section.

* * *

**c.**    The interior of any building or structure, or to personal property in the building or structure, caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless:

**(1)**    The building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice, sand or dust enters; or

**(2)**    The loss or damage is caused by or results from thawing of snow, sleet or ice on the building or structure.

* * *

58.    The Covered Cause of Loss Form is amended by an endorsement that provides additional coverage for certain losses arising out of equipment breakdown.

**EQUIPMENT BREAKDOWN ENHANCEMENT ENDORSEMENT**

**COMMERCIAL PROPERTY COVERAGE PART**

This endorsement modifies insurance provided under the following:

**BUILDING AND PERSONAL PROPERTY COVERAGE FORM — CP 0010**
**CONDOMINIUM ASSOCIATION COVERAGE FORM — CP 0017**
**CONDOMINIUM UNIT-OWNERS COVERAGE FORM — CP 0018**
**CAUSES OF LOSS - BASIC FORM — CP 1010**
**CAUSES OF LOSS — BROAD FORM — CP 1020**
**CAUSES OF LOSS — SPECIAL FORM — CP 1030**
**COMMON POLICY CONDITIONS — IL 0017**

15

* * *

**C.**    **CP 1010**, Causes of Loss - Basic Form**; CP 1020**. Causes of Loss — Broad Form, and **CP 1030,** Causes of Loss — Special Form, are revised as follows:

    **1.**    Section **A** — Covered Causes of Loss is revised to included "equipment breakdown"

* * *

**E.**    For the purposes of this endorsement the following definitions are added:

    **1.**    The following definition is added to **CP 1010**, Section **E**, Definitions; **CP 1020**, Section **F**, Definitions and **CP 1030**, Section **G.**, Definitions:

    "Equipment breakdown" as used herein means:

        **a.**    Physical loss or damage both originating within:

            **(1)**    Boilers, fired or unfired pressure vessels, vacuum vessels, and pressure piping, all normally subject to vacuum or internal pressure other than static pressure of contents, excluding:

                **(a)**    Waste disposal piping;

                **(b)**    Any piping forming part of a fire protective system;

                **(c)**    Furnaces; and

                **(d)**    Any water piping other than:

                    **i.**    Boiler feed water piping between the feed pump and the boiler;

                    **ii.**    Boiler condensate return piping; or

                    **iii.**    Water piping forming part of a refrigerating or air conditioning system used for cooling, humidifying or space heating purposes.

            **(2)**    Mechanical, electrical, electronic or fiber optic equipment; and

**b.** Caused by, resulting from, or consisting of:

    **(1)** Mechanical breakdown;

    **(2)** Electrical or electronic breakdown; or

    **(3)** Rupture, bursting, bulging, implosion, or steam explosion.

However, "Equipment Breakdown" will not mean:

Physical loss or damage caused by or resulting from any of the following; however if loss or damage not otherwise excluded results, then we will pay for such resulting damage:

**a.** Wear and Tear;

**b.** Rust or other corrosion, decay, deterioration, hidden or latent defect, mold or any other quality in property that causes it to damage or destroy itself;

**c.** Smog;

**d.** Settling, cracking, shrinking or expansion

**e.** Nesting or infestation, or discharge or release of waste products or secretions, by birds, rodents or other animals;

**f.** Any accident, loss, damage, cost, claim, or expense, whether preventative, remedial, or otherwise, directly or indirectly arising out of or relating to the recognition, interpretation, calculation, comparison, differentiation, sequencing or processing of data by any computer system including any hardware, programs or software;

**g.** Scratching or marring;

**h.** Any loss, damage, cost or expense directly caused by, contributed to by, resulting from or arising out of the following causes of loss:

    Fire, lightning, combustion explosion, windstorm or hail, weight of snow, ice or sleet, freezing, falling objects, smoke, aircraft or vehicles, riot or civil commotion, vandalism, sinkhole collapse, volcanic action, leakage from

fire extinguishing equipment, water damage, earth movement and flood;

**i.** The following Causes of Loss to Personal Property:

**(1)** Dampness or dryness of atmosphere,

**(2)** Marring or scratching.

* * *

59. Finally, all coverage parts are governed by the certain policy conditions. In relevant part, these conditions include a requirement that the alleged loss or damage commence during the policy period.

### COMMERCIAL PROPERTY CONDITIONS

This Coverage Part is subject to the following conditions, the Common Policy Conditions and applicable Loss Conditions and Additional Conditions in Commercial Property Coverage Forms.

* * *

**H.     POLICY PERIOD, COVERAGE TERRITORY**

Under this Coverage Part:

**1.** We cover loss or damage commencing:

**a.** During the policy period shown in the Declarations; and

**b.** Within the coverage territory.

**2.** The coverage territory is:

**a.** The United States of America (including territories and possessions)

* * *

## COUNT ONE – DECLARATORY JUDGMENT

60.     Plaintiff incorporates paragraphs 1 through 59 of this Complaint by reference as if fully set forth at length herein.

61.     Plaintiff seeks a declaration that no coverage exists under United Specialty's Commercial Property Policy coverages pursuant to 28 U.S.C. § 2201.

62.     No coverage exists under the United Specialty policy for AMBE MA's alleged storm damage claim because the damage to the roofs of the units were the result of wear and tear; deterioration; and/or faulty, inadequate or defective construction or maintenance.  Therefore, the loss is excluded under Exclusion 2.d. and Exclusion 3.c in the Covered Cause of Loss Form.

63.     Further, to the extent that AMBE MA seeks recovery for damage to the interior of any building or structure, or to personal property in such a building, resulting from rain water, no coverage exists under the United Specialty policy because the entry of water into the structure was not the result of a Covered Cause of Loss.

64.     No coverage exists under the United Specialty policy for AMBE MA's alleged gas leak and/or equipment boiler equipment breakdown claim as there is no evidence that there was a gas leak and/or equipment boiler equipment breakdown on September 2, 2015.

65.     No coverage exists under the United Specialty policy for AMBE MA's alleged gas leak and/or boiler equipment breakdown claims, because there is no evidence of a direct physical loss of or damage to Covered Property caused by a Covered Cause of Loss.

66.     No coverage exists under the United Specialty policy for AMBE MA's alleged gas leak and/or boiler equipment breakdown claim, because the claim is excluded under the faulty workmanship, repair, and/or maintenance exclusion, Exclusion 3.c.

67.     No coverage exists under the United Specialty policy for AMBE MA's alleged gas leak and/or boiler equipment breakdown claim under the Building, Business Personal Property, or Business Income and Extra Expense Coverages because the claim is excluded under the policy's Ordinance or Law Exclusion, Exclusion 1.a and Governmental Action Exclusion, Exclusion 1.c..

68.     No coverage exists under the United Specialty policy for AMBE MA's alleged gas leak and/or boiler equipment breakdown claim under the Ordinance or Law Coverage because the property was not demolished as a result of the alleged gas leak and/or boiler equipment breakdown.

69.     Even if AMBE MA could show a direct physical loss of or damage to Covered Property caused by a Covered Cause of Loss, there may be no coverage or coverage may be limited under the Ordinance or Law Coverage.  Ordinance or Law Coverage "applies only in response to the minimum requirements of the ordinance or law."

70.     As to the alleged gas leak and/or boiler equipment breakdown claim, AMBE MA has only alleged that there was damage in Unit 17.  Even if AMBE MA could show a direct physical loss of or damage to Covered Property caused by a Covered Cause of Loss, AMBE MA's Ordinance or Law Coverage claim would be limited to Unit 17.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, United Specialty Insurance Company, respectfully requests that this Court enter judgment as follows:

A.     Declaring that there is no coverage for AMBE MA's alleged storm damage claim arising out of damage, alleged to have occurred in August 2015, under the United Specialty Insurance Company Commercial Property Policy.

B.     Declaring that there is no coverage for AMBE MA's alleged gas leak and/or boiler equipment breakdown claim, alleged to have occurred on September 2, 2015, under the United Specialty Insurance Company Commercial Property Policy.

C.     Awarding United Specialty Insurance Company its costs, expenses, and reasonable attorneys' fees.

D.     Awarding United Specialty Insurance Company such other relief that the Court deems just and proper under the circumstances.

MEAGHER & GEER, P.L.L.P.

Dated:  August 4, 2017                    /s/ John Hendricks
                                          John C. Hendricks, SB#7590
                                          8800 North Gainey Center Drive, Ste. 261
                                          Scottsdale, AZ  85258
                                          Tel:     (480) 624-8569
                                                   (480) 607-9780
                                          Email:   jhendricks@meagher.com

*And*

21

Stacy A. Broman
Jeffrey E. Dilger
33 South Sixth Street, Ste. 4400
Minneapolis, MN  55402
Tel:       (612) 338-0661
Fax:      (612) 338-8384
Email:   sbroman@meagher.com
              jdilger@meagher.com
(*Pro Hac Vice Application to be Submitted*)

(*Counsel for Plaintiff United Specialty Insurance Company*)

\11695456.1